# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND OCHOA, | Case No. 1:09-cv-01627-MJS PC |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DR. JEAN-PIERRE, | (ECF No. 48) |
| Defendant. | |

## I.    PROCEDURAL HISTORY

Plaintiff Raymond Ochoa ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 15, 2009.  The action proceeds on Plaintiff's Complaint against Defendant Dr. Jean-Pierre ("Defendant") for allegedly providing inadequate medical care to Plaintiff at California Substance Abuse Treatment Facility in Corcoran, California, thereby violating Plaintiff's rights under the Eighth Amendment to the United States Constitution.  28 U.S.C. § 1915A.

On May 30, 2013, Defendant filed a motion for summary judgment.  (Def.'s Mot, ECF No. 37.)  Plaintiff, by then represented by counsel, opposed the motion on June 13, 2013 (Pl.'s Opp'n, ECF No. 38), and Defendant filed a reply on June 21, 2013 (Def.'s

Reply, ECF No. 39).[1]  The motion is decided on the record without oral argument.  Local Rule 230(g).

## II.   LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. United States., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty

---

[1] Douglas Gordon was appointed as Plaintiff's counsel through the Court's Pro Bono Program on January 28, 2011.  (ECF No. 18.)

2

Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial.  Aloe Vera of America, Inc. v. U.S., 699 F.3d 1153, 1165 (9th Cir. 2012) (citing Anderson, 477 U.S. at 249).

**III.    DISCUSSION**

    **A.    Plaintiff's Position**[2]

Plaintiff alleges that Defendant failed to properly diagnose and treat Plaintiff's wrist fracture and instead left him to suffer severe pain from January 20, 2009, until March 2009, when another physician at another facility diagnosed and treated the fracture. More specifically, Plaintiff asserts:

On January 20, 2009, Plaintiff was an inmate at California Substance Abuse and Treatment Facility in Corcoran ("CSATF").  Defendant Jean-Pierre, a Physician's Assistant, was Plaintiff's primary health care professional and was responsible for treating Plaintiff's hepatitis C and cancer.  Plaintiff saw Defendant on January 20, 2009 for a follow-up hepatitis visit.  Because Plaintiff complained of a wrist injury from a fall, Defendant also examined the wrist at that time and ordered Plaintiff held in the Treatment Triage Area ("TTA") until x-rays were taken and their results analyzed with Plaintiff. Defendant wanted to review the x-rays himself and determine what, if any, follow-up treatment might be needed.

X-rays of Plaintiff's right wrist were taken in the morning of January 21, 2009, as Defendant Jean-Pierre had directed.[3]  According to Plaintiff, a nurse placed the x-rays on Defendant's desk.  The x-rays remained there for approximately ten days, but Defendant

---

[2] Summarized from Plaintiff's response to Defendant Jean-Pierre's undisputed facts and Plaintiff's additional material facts.  (ECF No. 38-1.)

[3] The x-ray report indicates they were taken on the afternoon of that day. (Supp. Jeffrey Decl., ECF No. 39-3 at 8.)

did not review or analyze them. On January 28, 2009, Plaintiff submitted a health care services request seeking information about the x-rays, but received no response.

As Plaintiff's primary care physician, Defendant should have provided Plaintiff with medical care for his broken wrist. He could and should have referred Plaintiff to a surgeon or specialist if necessary. Instead he did nothing to follow-up on Plaintiff's wrist injury.

Ten days after Plaintiff met with Defendant Jean-Pierre regarding his wrist, Plaintiff was transferred to Sierra Conservation Center. Upon transfer, Plaintiff was seen by Doctor Michael Forster. Doctor Forster ordered x-rays and prompt follow-up care for the fracture revealed in the x-rays.

Defendant Jean-Pierre's failure to properly treat Plaintiff's wrist in a timely fashion led to a malunion of the wrist bones. Proper treatment at CSATF would have left Plaintiff with less severe residuals.

### B. Defendant's Position[4]

Plaintiff was incarcerated at CSATF January 2009. Defendant Jean-Pierre was working as a physician's assistant at CSATF at the time. He was responsible for counseling and treating prisoners, such as Plaintiff, suffering from hepatitis C. On January 20, 2009, Plaintiff had a follow-up appointment with Defendant. Although unrelated to his follow-up care, Plaintiff informed Defendant that he had injured his wrist getting out of his bunk. Defendant Jean-Pierre recommended that Plaintiff's wrist be x-rayed. Defendant never saw Plaintiff again.

On January 21, 2009, the day after Plaintiff's appointment, Defendant went to the TTA in the morning, but did not see Plaintiff there. Defendant concluded that Plaintiff's x-ray results had been read by another health care professional and that the other practitioner followed proper CSATF's procedures for dealing with inmates' x-rays.[5]

---

[4] Summarized from Defendant's statement of undisputed facts (ECF No. 37-2) and Defendant's reply separate statement of undisputed facts (ECF No. 39-1).

[5] Typical CSATF procedures for dealing with x-rays were: After an x-ray was made, the results were placed on a board in the TTA for the medical professional assigned to the TTA to review. (ECF No. 37-2 at

4

Unbeknownst to Defendant, Plaintiff's x-rays were not taken until the afternoon of January 21, 2009. As a result, Defendant did not see the x-ray or its report until after this litigation was initiated. The x-rays do show Plaintiff had fractured his wrist.

Defendant Jean-Pierre was not Plaintiff's primary health care physician. He was not responsible for ensuring Plaintiff's x-rays were read or for seeing that Plaintiff received proper care for the wrist injury. Moreover, since Defendant was not assigned to Plaintiff's yard, he did not see the health care services request form Plaintiff submitted in response to the prison's failure to treat his wrist.

Defendant never saw Plaintiff after the January 20, 2009 appointment. Plaintiff was transferred to another institution on February 4, 2009.

### C. Applicable Law

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, an inmate must demonstrate deliberate indifference to a substantial risk of harm to his health or

---

¶ 10-12.) If abnormalities were noted, the medical professional would call the clinic in the inmate's assigned yard and talk to the primary care physician assigned to the yard or make a referral to a specialist. (Id.) The x-ray would also be sent to an outside medical group for further evaluation. (Id.)

safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

### D. Analysis and Findings

Plaintiff alleges that Defendant Jean-Pierre was aware of Plaintiff's possibly serious injury and nevertheless failed to review x-rays of it and diagnose and treat the injury. That, according to Plaintiff, is deliberate indifference.

The parties do not dispute that Plaintiff informed Defendant Jean-Pierre about his injured wrist on January 20, 2009, that Defendant Jean-Pierre ordered x-rays of the wrist, and that Plaintiff never received any further care from Defendant Jean-Pierre. Plaintiff alleges that the delay in treatment prolonged his pain and interfered with proper healing of the wrist. No one can seriously dispute that the wrist injury and the pain endured from it, especially during the period it went untreated, constituted a serious medical need.

The real dispute here is whether Defendant Jean-Pierre had any obligation to ensure Plaintiff was provided follow-up care for the fractured wrist and, if so, whether the failure to do so was an actionable violation of Eighth Amendment standards.

Defendant alleges that since he was not Plaintiff's primary care physician, he had no obligation to review Plaintiff's x-rays or see that Plaintiff received treatment for his fractured wrist. Prison protocol called for the medical practitioner on duty in the TTA to take on that responsibility. In fact, according to Defendant, he did not learn of the failure to timely review the x-rays or of the fracture until the current litigation was initiated. Being unaware of the fracture, he could not have been deliberately indifferent to it.

Plaintiff argues that as Plaintiff's primary care physician, Defendant was obligated to ensure the order for x-rays was followed and the x-rays reviewed. Plaintiff also says the X-rays were taken on the morning of January 21 as directed by Defendant and thus available for Defendant's review when he visited TTA that day. Defendant disputes that. Finally, Plaintiff asserts that a nurse at CSATF reported that Defendant did receive Plaintiff's x-rays, but knowingly left them sitting on his desk for several days and refused to review them. Thus, Plaintiff claims that at a minimum there are triable issues of fact as to when the x-rays were taken and available for Defendant's review and as to whether Defendant affirmatively ignored them.

A conscious disregard of Plaintiff's medical needs such as that reportedly described by the nurse to Plaintiff could constitute an Eighth Amendment violation. However the evidence of the nurse's statement is uncorroborated hearsay, and it comes from Plaintiff alone. Its speaker has never been identified or attested to the truthfulness of the statement attributed to her. (ECF No. 38-1 at ¶ 10; Gordon Decl, ECF No. 38-2 at Ex. 1 at 59:10-15; 61:11-15; 62:10-15.) Under such circumstances, the statement cannot be given **any** probative weight. Fed. R. Evid. 801(c), (d)(2)(D). Absent that evidence, there is no evidence Defendant actually knew the x-rays existed and were going un-reviewed.

The dispute between Plaintiff and Defendant as to when the x-ray were taken and

available for review is indeed a factual and credibility dispute. It cannot however be said to be a material one. Whether Defendant could have reviewed the x-rays and did not is not the issue here. The question is: Did Defendant have a duty to see that the x-rays were reviewed and, if so, did he knowingly disregard that duty.

Liability may not be imposed on Defendant under a theory of *respondeat superior*; he may only be held liable for violating Plaintiff's rights under the Eighth Amendment if he knowingly disregarded a substantial risk of harm to Plaintiff's health or turned a blind eye to the deliberate indifference of subordinate employees. Snow, 681 F.3d 989; Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Jett, 439 F.3d at 1098. There must be some culpable conduct directly attributable to Defendant. Starr, 652 F.3d at 1205.

Here the evidence satisfies the Court that:

1. Defendant knew Plaintiff complained of symptoms from a wrist injury;
2. Defendant obviously concluded that the symptoms were severe enough to suggest the possibility of an injury, such as a fracture, that might show up on x-ray;
3. Defendant ordered the x-ray;
4. Defendant knew the x-ray needed to be reviewed for proper diagnosis and treatment of the wrist injury;
5. Defendant made some limited inquiry as to whether the x-ray was available for his review, but when this inquiry went unanswered, he **assumed** another health care professional had reviewed the x-ray and responded accordingly;
6. Consequently, Defendant did nothing further to see if Plaintiff needed and received treatment; and
7. In fact, review of the x-rays and treatment of the wrist fracture were delayed for some forty days during which time Plaintiff unnecessarily endured pain and suffering which could have been reduced in duration and/or severity with

proper and timely treatment.

Certainly such facts might support a finding of negligence, i.e., medical malpractice. "The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." Johnson v. Superior Court, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (Cal. Ct. App. 2006.) The failure to take an x-ray where a patient, like Plaintiff, has suffered a fall may sometimes constitute negligence. See, e.g., Kingston v. McGrath, 232 F.2d 495 (9th Cir. 1956.) However, mere negligence is not enough to support an Eighth Amendment violation. Wilhelm, 680 F.3d at 1122. The crucial question here is whether these facts could be found to support a finding that Defendant consciously disregarded a substantial risk of harm to Plaintiff.

The failure to ensure follow up on Plaintiff's condition under these circumstances seems, in the mind of the Court, to have been a significant professional failure. Most any patient would, and should be able to, reasonably expect his primary health care professional to ensure the patient received appropriate medical attention, especially (as is suggested by Plaintiff here) the professional expressed an intent personally to follow up. Even where, as here, there were procedures in place for others to provide the follow-up care, one might reasonably expect the primary practitioner to ensure that the procedures were carried out. Thus, one could argue that the professional in this case, while believing Plaintiff might indeed have a serious injury, was so indifferent to Plaintiff's plight that he did not bother to check to make sure procedures were followed. Instead, he just "assumed" everything was handled as it should have been.

However, as noted, the criteria for an Eighth Amendment violation is not mere negligence or even difficult-to-understand indifference. The question here is: Was the indifference "deliberate", "knowing", "purposeful", or "subjectively reckless"?

There is no evidence to suggest that it was any of those things. There is no

evidence Defendant **intended** Plaintiff to go undiagnosed and untreated, or that he **knew**, or even **should have known,** that Plaintiff would go undiagnosed and untreated. There is no evidence he failed to act because he wanted Plaintiff to suffer, or that he did so with a knowing disregard of the possibility Plaintiff would suffer.  Instead, the evidence is that Defendant followed and relied upon established prison protocol designed to ensure proper diagnosis and treatment.  While one might question the procedures and blind reliance upon them, complying with them cannot be said to constitute deliberate indifference.

### IV. CONCLUSION AND ORDER

In conclusion, there is no evidence that Defendant Jean-Pierre acted with deliberate indifference toward Plaintiff in January 2009.  Defendant is entitled to judgment as a matter of law.

Accordingly, the Court HEREBY ORDERS that Defendant's motion for summary judgment, filed on May 30, 2013, be GRANTED, thus concluding this action in its entirety.

IT IS SO ORDERED.

Dated:   February 3, 2014                      /s/ *Michael J. Seng*
                                               UNITED STATES MAGISTRATE JUDGE